NELSON v. JENKINS.

No. 4559.

Court of Civil Appeals of Texas. El Paso.
May 12, 1948.

Rehearing Denied June 16, 1948.

Biggers, Baker & Lloyd, Ralph D. Baker and Spencer Carver, all of Dallas, for appellant.

D. A. Frank and D. A. Frank, Jr., both of Dallas, for appellee.

McGILL, Justice.

The trial court rendered judgment for appellee against appellant for $1500.00 as damages because of appellant's breach of a written contract whereby appellant as seller agreed to convey to appellee and wife as purchaser twelve acres of land with improvements thereon, situated in Dallas County. The land constituted the homestead of appellant and his wife. The agreed purchase price was $21,000.00 cash. Trial was to a jury. Only two issues were submitted and the findings were that the reasonable cash market value of the real estate in question on February 1, 1946, (the date of the contract) was $22,500.00, and that the highest reasonable cash market value thereof between February 1, 1946 and November 21, 1946, (the date of the filing of the suit) was $22,500.00.

Appellant presents seven points on which he relies for a reversal. He earnestly contends first, that since the contract was to convey the homestead of himself and his wife, and his wife refused to sign a deed thereto, he is not answerable in damages for the breach thereof; and secondly, if he is liable at all the court applied an improper measure of damages in awarding the difference between the contract price and the highest reasonable cash market value of the property; that the limit of his liability is to reimburse appellee for the amount he had expended in good faith under the contract.

The following facts appear from the uncontroverted testimony: At all relevant times the property in question was the homestead of appellant and his wife, and they were occupying it as such. They had listed it for sale with Guion Gregg, a real estate broker, at a price of $22,500.00. A few days prior to February 1, 1946, appellee and his wife were taken to look at the property by an employee of Gregg; on February 1st they signed the contract in question which provided a purchase price of $21,000.00 cash, of which appellee deposited $500.00 with Gregg as part payment. On the same day this contract was taken by Gregg to appellant's home and there signed by him in the presence of his wife. His wife did not sign the contract. It contained the following clauses: "It is agreed and understood that this contract is contingent upon the completion of a G. I. loan now pending." And "It is agreed and understood the complete possession of the property, premises and improvements will be given on or before 60 days from this date." Mrs. Nelson testified that at the time Gregg submitted the contract to them he told them that the sale would be closed in a week or ten days; that after he had gone she discovered there was no such provision in the contract and immediately decided she would not go through with the deal because of the necessity of an imme-

diate sale, due to Mr. Nelson's health; that she told her husband she would not sign the deed or go through with the deal without a time limit. Appellant testified that he told Gregg the next day he was not going to execute the deed and that he had a letter written to appellee and his wife telling them that because of the misconception and misunderstanding of Mr. Gregg's statement at the time he signed the contract and because he was a sick man he could not wait indefinitely. The letter referred to was written by Aubrey J. Roberts as counsel for appellant and his wife under date of February 9, 1946. Appellant also testified that he called the deal off the same day he signed the contract and so notified Mr. Gregg; that he saw the banker who was handling the G. I. loan about two or three days after he signed the contract and learned from him that the loan could not be consummated in anything like ten days, and he then told Gregg to inform Mr. Jenkins that they could not wait indefinitely; that he knowingly, willingly and intentionally broke the contract. On February 11, 1946, appellant and his wife signed a contract with John T. Scogin in which they agreed to sell the property to Scogin for $22,500.00 cash. This deal was closed and possession delivered to Scogin prior to February 27, 1946.

Appellant's contention finds support in obiter dicta found in the opinion in Saulsbury v. Anderson, Tex.Civ.App., 39 S.W.2d 142, loc. cit. 148, (Wr. Dis.) where the Court said: "When the husband has attempted to sell the homestead and the wife refuses to sign, the purchaser may recover for the breach of the contract only the amount he has expended thereunder. Eberling v. Deutscher Verein, 72 Tex. 339, 12 S.W. 205. Where the vendor, the husband, acts in good faith and without fraud on his part and is unable to convey good title by reason of the property being the homestead, the purchaser is not entitled to recover damages for the loss of his bargain, but only such amount as he has advanced on the faith of the contract, plus interest. Cross v. Freeman, 22 Tex.Civ.App. 299, 54 S.W. 246; Roberts v. McFadden, 32 Tex. Civ.App. 47, 74 S.W. 105. See also Dobson v. Zimmerman, 55 Tex.Civ.App. 394,

118 S.W. 236. One of the reasons given for the holding that the purchaser can only recover what he has expended is that, as the contract is void, to allow damages to be recovered would indirectly tend to defeat the object of the homestead statute. Silander v. Gronna, 15 N.D. 552, 108 N.W. 544, 125 Am.St.Rep. 616."

Saulsbury v. Anderson was cited and followed in Bradley v. Howell, Tex.Civ.App., 126 S.W.2d 547, loc. cit. 565 (Wr. Dis. Judg. Correct) but what was said on this point was not necessary to the decision in that case, and is also dicta. Texas Jurisprudence also supports appellant's contention, citing Saulsbury v. Anderson as "The view which seems better to accord with fundamental considerations", although recognizing that there is authority to the contrary. 22 Tex.Jur. p. 114, Sec. 79. As opposed to this view is the statement in Speer, Law of Marital Rights in Texas, Sec. 254, p. 325, that "Such contracts are held to be binding on the husband. He may be required to respond in damages for breach." Citing Krebs v. Popp, 42 Tex. Civ.App. 346, 94 S.W. 115 (Wr. Dis.); Brewer v. Wall, 23 Tex. 585, 76 Am.Dec. 76; Fonda v. Colquitt, Tex.Civ.App., 165 S.W. 1195. That damages may be recovered against the husband for breach of such a contract was definitely settled in this State by the authoritative holding of the Supreme Court in Cross v. Everts, 28 Tex. 523, 524. In that case the trial court sustained exceptions to plaintiff's petition which sought to specifically enforce an alleged agreement to convey the homestead of defendants in exchange for land of the plaintiff, and in the alternative sought damages for a breach of such agreement. The Supreme Court, after holding that the agreement could not be specifically enforced, reversed the case on the sole ground that the allegations of the petition were sufficient to sustain an action for damages against the husband. The court quoted from Brewer v. Wall, 23 Tex. 589, 76 Am. Dec. 76: "It is true that a husband is not at liberty to alienate the homestead during the wife's life without her consent. But we cannot perceive that a bond executed by him in his wife's life-time, conditioned that he will convey his homestead with

a perfect title at a future time, would be a void instrument in contemplation of law. We think such a bond would be binding upon the husband, and upon a breach of it damages might be recovered against him by suit upon the bond."

In Goff v. Jones, 70 Tex. 572, 8 S.W. 525, 8 Am.St.Rep. 619, Brewer v. Wall and Cross v. Everts were cited and it was held that a title bond to convey the homestead could be specifically enforced against the husband if at the time fixed for its performance the homestead had been abandoned. The appellee had contended that appellant's right to specific performance had been adversely adjudicated against him on a former appeal and was res adjudicata, and that in the absence of fraudulent or wrongful intent on the part of the husband the trial court had allowed the full measure of damages recoverable, i. e., all purchase money paid and all expenditures of labor and money made by appellant, with interest thereon. 70 Tex. 574, 8 S.W. 525, 527, 8 Am.St.Rep. 619. After holding that if the facts alleged in the plaintiff's amended petition as to abandonment of the old homestead and the acquisition of a new one were true, specific performance could be enforced against the husband, the court said: "If, however, the facts alleged are not true, Goff can maintain his suit for damages against Jones for breach of the conditions of the bond; in which case the measure of damages would be the amount expended by Goff with consent of defendant, in good faith, under the contract of sale, and the difference in the contract price and the value of the premises at the time of the performance of the bond, excluding from such value at the time of performance any additional value the improvements made by Goff may have given to the premises." There is nothing in the opinion which would indicate that there was any fraudulent or wrongful intent on the part of the husband. The judgment was reversed and the cause remanded.

In Krebs v. Popp, 42 Tex.Civ.App. 346, 94 S.W. 115, loc. cit. 116, those authorities were cited and the court's conclusion was: "These cases seem to us to clearly establish the proposition that the husband may lawfully contract for the sale of the homestead; that when made it is not absolutely void, particularly when, as here, entered into by and with the consent of the wife; and that when such a contract is breached because of a subsequent refusal of the wife to join in the conveyance, which she is at perfect liberty to do, the court will award as against the husband damages for the breach, although it will refuse to enforce specific performance." And a judgment based on a peremptory instruction to find for the plaintiff for $100.00, which was the amount paid by the purchaser on execution of the contract, was reversed and the cause remanded for finding as to whether the value of the land at the time of the breach of the contract was in excess of the contract price. Goff v. Jones and Krebs v. Popp were cited in Fonda v. Colquitt, Tex. Civ.App., 165 S.W. 1195 and recovery against the husband for $500.00 stipulated as damages for breach of the contract, was approved. Again, there is no intimation of bad faith on his part. An annotation in 4 A.L.R. 1272 cites Cross v. Everts and Krebs v. Popp as representing the minority rule.

Apart from any question of homestead, the measure of damages recoverable by a purchaser where the vendor is unable to make title as agreed in the absence of fraud or stipulation to the contrary is the amount paid on the contract, if any, with interest from the time of payment and such special damages, not including the loss of his bargain, as he may allege and prove. Garcia v. Yzaguirre, Tex.Com.App., 213 S.W. 236, loc. cit. 242; 43 Tex.Jur. Sec. 354, p. 604; Eagle Pass Lumber Co. v. The Amortibanc, Tex.Civ.App., 124 S.W. 2d 186. Logically it is difficult for us to perceive why the same measure of damages should not apply to the breach of an executory contract by the husband to convey the homestead, entered into in good faith, which he in good faith sought to perform but was unable to perform because of his wife's refusal to sign the deed. Goff v. Jones indicates that such is not the law, and of course is binding on this Court. However, the measure of damages specified in Goff v. Jones is applicable under the

144

record in this case without resort to that authority.

Appellant testified that on the same day he signed the contract he discovered that it contained no time limit for closing the deal and they (he and his wife) decided to call Gregg immediately and tell him that unless it was completed in ten days it was off; that they did call the deal off the same day the contract was signed and so notified Gregg; that two or three days after he signed the contract he saw the banker who was handling the G. I. loan and learned from him that the loan could not be consummated in anything like ten days, and then told Gregg to inform Mr. Jenkins that they could not wait indefinitely; that he knowingly, willingly and intentionally broke the contract. He never furnished appellee an abstract of title or owner's title policy as agreed in the contract, nor did he tender a deed thereto signed by him alone, which would have effected a valid conveyance on abandonment of the property as a home by him and his wife (Goff v. Jones, supra) or on his wife's death (Brewer v. Wall, supra). On February 11 he signed the contract with Scogin for a price $1500.00 in excess of that for which he had agreed to sell it to appellant and prior to February 27th he and his wife conveyed it by deed to Scogin, thus making it impossible for him to perform the contract. It is apparent from his own testimony that appellant's reason for breaching the contract was not solely because his wife refused to sign the deed. The time element in closing the deal was one, if not the controlling reason. The misunderstanding as to the time in which the deal was to be closed was due to the representations of Gregg, who was his agent, and was no part of his contract with appellee. Even disregarding the increased price he received for the property his testimony evidences an utter lack of an honest effort on his part to perform the contract and a wilful intention to breach it, regardless of the fact that his wife refused to sign the deed. In other words, a lack of good faith. Under such circumstances, by all the authorities appellant is entitled to recover his damages, including the loss of his bargain.

The contract also contained the following clause: "In the event of failure to furnish good and marketable title the cash deposit hereby receipted for is to be returned to purchaser upon the cancellation and return of this contract; or purchaser may enforce specific performance of same."

The $500.00 deposited with Gregg was returned by Gregg to appellee and accepted by him. According to appellee's testimony, which is uncontradicted, this occurred about a week after he went to the property about March 1st and found someone else living in the house. On March 4th his attorney notified appellant by letter of his claim for damages because of appellant's breach of the contract. Appellant contends that under the above quoted clause the return and acceptance of the $500.00 deposit cancelled the contract by compliance with its terms. There is no merit in this point. Appellant had willfully breached the contract and sold the property, thus putting it out of his power to perform before appellee accepted the return of the deposit. Had the deposit not been returned he would have unquestionably been entitled to recover it, as well as his damages. The withdrawal of the deposit after the vendor has willfully and in bad faith breached the contract and notified the purchaser that he would not convey the land can not defeat the right of the purchaser to recover his damages. Hoskins v. Dougherty, 29 Tex.Civ.App. 318, 69 S.W. 103, loc. cit. 106, last par. 1st col. (Wr. Denied).

Likewise without merit is appellant's point that the contract is void and unenforceable for lack of mutuality because of the clause making it contingent upon the completion of a pending G. I. loan. This clause did not render the contract a nudum pactum. There was mutuality of obligation upon the signing of the contract. Appellee by necessary implication promised to pursue the pending application for the loan diligently, and to apply the proceeds thereof to the payment of the agreed purchase price. The absence of mutuality of remedy when the contract was signed did not render the promises of the parties any less obligatory. When the loan was approved,

145

as the uncontroverted evidence shows it was, appellant could have specifically enforced the contract and mutuality of remedy was thereby supplied. Langley v. Norris, 141 Tex. 405, 173 S.W.2d 454, loc. cit. 458, 148 A.L.R. 555.

■ Nor was a jury finding that appellee was ready, able and willing to perform necessary to sustain the judgment as urged by appellant. Appellant had breached the contract and sold the land to another, thus putting it beyond his power to perform before the time for appellee to perform had expired. Under these circumstances any effort of appellee·to carry out the terms of the contract would have been fruitless—a meaningless ceremony. The general rule which requires a purchaser to show that he was ready, able and willing to perform in actions for breach of contract to convey has no application where he is not in default and the vendor has put it out of his power to perform. Nevins v. Thomas, 80 Tex. 596, 16 S.W. 332; Porter v. Memphis Land & Comm. Co., Tex.Civ.App., 159 S.W. 497 (Wr. Ref.).

■ On direct examination appellee's counsel asked appellant if he paid Mr. Gregg a commission for handling the contract and he answered that he did, under pressure, that he had to. Objection was then interposed that such testimony was immaterial and irrelevant, which was overruled and exception taken. When appellant took the stand in his own behalf on cross examination appellee's counsel again asked him if he paid a commission to Gregg for making the other deal (the deal with Scogin) and he answered that he paid him a settlement so he would not have to go to court. Objection was renewed and the court asked to declare a mistrial. The objection was overruled and the motion for mistrial denied. Over timely objection that such testimony was irrelevant and immaterial and prejudicial, appellee's counsel was permitted to elicit testimony from the witness Guion Gregg that he brought suit against appellant for ·his commission and received $500.00 by way of compromise for making the deal in question. Error is assigned on these rulings. It is noted that appellant's testimony was given before ob-

jection was made and the objection came too late. Gregg's testimony was inadmissible, and should have been excluded; its only possible relevance was to tend to show that appellant recognized that he might be liable to Gregg for a commission for procuring a contract which he claimed was void. Whether the contract was void was a question of law and that appellant recognized that he might be liable to Gregg for procuring it could have no bearing on its validity. However, the substance of Gregg's testimony had already been elicited from appellant without timely objection. We think it could have in no way prejudiced appellant on the issues as to value, which were the only issues submitted. The error was harmless.

The judgment is affirmed.